Appeal 1049. May I discuss your amendments right away? Certainly. Madam Proch? Yes, please.  that we received, I planted the number. I'm going to ask you to come up to the podium, and I'd like to hear your argument as soon as you're ready. Good morning. Welcome to the court. Good morning, Your Honors. Thank you very much for permitting me to appear here on behalf of my client, Mr. Benjes, this morning. The fundamental issue before this court is when did Mr. Benjes' case against Mr. Moss and his firm actually occur? Under New York law. Under New York law. Were there some other law or other state law? Before you get to that, let me ask you a question. Is there any doubt or what that this court rather than the Second Circuit has jurisdiction over this appeal? How does your claim involve interpretation and application of patent law? That's what I don't quite understand. I have some ideas about it. I wonder if you could tell me that because I take it there's nothing you can look for        It is a patent law. It's a patent law. It's a patent law. It's a patent law. It's a patent law. It's a patent law.            See we're all at a different level. That kind of makes a lot of sense. There's no other law that says what kind of an inquiry a law firm should make before it tells the client that they think he has a patent on an invention. Your Honor, we ask ourselves the same question. That's one of the reasons why the case was initially filed to the Second Circuit. However, the Statutes of the United States 28 U.S.C. Section 1338, which talks about jurisdiction of the courts and specifically the courts of appeals, specifically says that any case, any case, that even remotely deals with the question of patents should be properly turned over to the Federalist Circuit. When I did file my initial appeal, it was filed in the Second Circuit. Counsel from the other side and I then conferred, investigated together the statutes, and we both agreed that under the circumstances, because the underlying issues, if this case wasn't in fact to be reversed and returned to the district court in the Southern District of New York, has to do with whether a patent was valid and enforceable. And so under that theory, we're here before you. Well, I don't think it's quite right to say the issue is the validity of the patent. The patent's already been adjudicated to be invalid. The issue seems to be whether a prior art search was made that was up to the standards of prior art searching. And it's not so clear that the nature or extent of a prior art search requires entering a substantial question of patent law as opposed to ordinary due diligence law. But, Your Honors, this is considered the expert court in the issues of patent law. And who better than this court as an expert court in the areas of patent to decide what the due diligence should have been in the case? We don't have the ability to say we're more expert, therefore we have jurisdiction. We only have jurisdiction if resolving this case requires us to answer a substantial question of patent law. So what is the substantial question of patent law as opposed to due diligence law that we would necessarily have to answer to resolve this appeal? At this time, there is no substantial question of patent law. The question simply is whether, in fact, a cause of action for legal malpractice accrued in December of 2007, or did it accrue in December of 2005? I understand, Your Honor. So it doesn't arise or implicate the patent laws at that point. With a strict interpretation of the statutes relating to the jurisdiction of this court in connection with patent issues, it was our interpretation, both mine and counsel for the appellee, that we'd rather bring it here because even remotely it involves a question of patent law. Well, the parties can't give us jurisdiction. I understand. It doesn't matter. We have no jurisdiction. So whether you agree with the other side that the case should be here, you still have to establish the fact that we have jurisdiction on the issue. And on what basis is that jurisdiction locked? On the basis that the underlying issues involve a question of patent law. What question? You say the underlying issues involve a question of patent law. My answer is what question of patent law? Let me suggest to you one possible answer might be the question of what is comparable are. Comparable prior art. Now, I don't know. The two patents that were found later on, did they involve cosmetic containers or other containers? Cosmetic containers, Your Honor. They involved cosmetic containers. Yes. Yes. But there still might be a question of whether the prior art involved something that was comparable to cosmetic containers. I suppose if you discovered the prior art in some sort of suitcase, you might say, well, that's nobody expected to do. Your argument, as I understand it, is that they didn't make an adequate search. Is that correct? That is correct. That if they had, in fact, engaged in the due diligence, even basic due diligence in connection with the patent search, they would have found these two particular patents that eventually decided to do it. But one of them was a Swiss patent, wasn't it? I'm sorry? One of them was a Swiss patent. Yes, Your Honor, but we have access. Does an American firm conducting a patent search have to search Swiss patents? Yes, Your Honor. Absolutely. And they have to search, I assume, Japanese patents. Absolutely. Certainly my law firm does. Absolutely. If 35 U.S.C. section 102A and B talk about anywhere that prior art that exists out there more than one year prior to the filing of an application published anywhere in the world, there is a duty to go out there and find it because exactly this might happen at some future date after the client has incurred a tremendous amount of cost and expense in going to a law firm, securing the firm, relying on their opinion, relying on the patent search results, engaging in all the things that inventors normally do to bring a product to market. But doesn't that really depend on the relationship between the client and the law firm as to the extent of the prior art search which is undertaken? I don't think so. The client can request a worldwide search and pay for it. He can request a U.S. search or he can request a search of certain only other European countries or otherwise. So that's an agreement between the client and the firm. And it's not just undertaken completely because a worldwide search is rather expensive. And some clients don't like the idea of spending that kind of money for lawyers. But, Your Honor, only if the attorney actually recommends and says to the client, listen, this is the situation, your patent might be declared invalid and unenforceable in a court of law. That's certainly our practice in our law firm. When a client comes in and says, I want to file for a patent, I want to secure a patent, I point out that the validity of the patent, the value of the patent is its enforceability in court. In anticipation of what potentially can happen in a court of law by a defendant, we suggest that not only a U.S. patent search be conducted, but a worldwide patent search is conducted for the purpose of anticipating what possibly might happen. When a patient goes to the doctor. Can you charge a court to do that? Well. Presume. Yes and no. But the charges are another issue, Your Honor. There are pre-filing searches that are done. There are post-filing searches. There are validity searches. And there are a whole scope of searches that can be done for patents and patent applications. But this intervention wasn't provided. The relationship of the client and the firm was at that particular time. If, in fact, the request was to file only in the U.S. and only U.S. prior search before filing, that's one aspect of it. But how does that impact patent law? I'm still not quite sure about the jurisdictional aspect of the search causing it to be a patent law issue. Because the legal malpractice involves a question of patent law and a question of due diligence in connection with the validity of a patent and the enforceability of a patent and the securing of that patent. Well, is the question of patent law then whether a foreign patent can invalidate a U.S. patent? Your Honor, this line of question has to be a little bit off-guard for the simple reason that we presume that since the Court accepted the appeal, that we were in the right court. I haven't really thought about that question and that issue. In reading the statutes, I personally read the statutes saying so long as there's even an iota of a patent somewhere in there, it deserves to be in this court. But the statute doesn't say remotely, which you mentioned three times earlier, and it doesn't say iota either. The operative language in the statute is substantial question of patent law. That's why the three of us keep asking you, well, what is the patent law question that has to be answered to resolve this appeal? And I'm still not sure we have your answer. Is it the interpretation of 102A? Is that the question of patent law? No. No. The issue here in this case for the dismissal is when did the statute of limitations actually start to speak? That's a state law question. I understand, Your Honor, and I agree. That's not a question of patent law. I agree. I agree. I understand and I agree. Now, the Second Circuit didn't send the case here. You dismissed there and refiled here by the public counsel. By stipulation. By stipulation. Yes. We're not barred, as I understand the ping-pong rule, from sending it to the Second Circuit if we conclude that we don't have jurisdiction because we can't identify a substantial question of patent law that's central to resolving the appeal. That's correct, isn't it? We can send it back. All right, well, why don't you address this? Why don't you assume for a minute that we ultimately may conclude we do have jurisdiction. Then, how do you get us to reverse the judgment in this case? We respectfully submit, Your Honor, that Mr. Benjes would not have been able to truthfully and properly allege with a specificity that is required by the new case that issued by the Supreme Court. Of course, but even if we assume he didn't know and couldn't have known within three years, New York law seems to be clear that the date of discovery of the problem doesn't count. It's the date of the bad act that starts the statute of money. Your Honor, it's not a question of discovery. The statute specifically says that a cause of action accrues when every single one of the elements of that cause of action can be properly planned. In the process of all the arguments that have taken place, what has happened is that the court has completely ignored a very important element in the cause of action. The federal district court, the law of the Southern District of New York, and the appellees, which is – Is there any New York – do you have any New York case that holds that a cause of action for legal malpractice does not accrue until the plaintiff is able to demonstrate precisely the total damages he or she is claiming? No, I do not have a case, and I couldn't find one. All the cases that I've found were accounted for. But there are cases out there saying that a cause of action for legal malpractice accrues when the legal action is completed. Not the legal action. When the legal malpractice cause of action, each and every one of the elements can be properly planned. McCoy stands for that proposition. Well, let's look at the date when the patent issued. 2002? I'm sorry? The patent issued in 2002, didn't it? I believe so. At that point, certainly you could demonstrate at least two elements of damage that had accrued. One was the amount you pay the lawyers, and two was whatever expenses you incurred in getting the patent. If you had to make two trips from somewhere to see the examiner, that would be it. So what happens if some damage is at least accrued? Your Honor, you can't get to the question of damages unless you can actually show a loss or injury. There was no injury at that point. The plaintiff actually had a patent. He had a benefit. He was not liable for anything. In the case of Asheville, he was liable for the amount he was agreed to pay the lawyers. He had paid them. There was no liability. They were fully paid. That was not an issue. When we talk about liability, we're talking about an injury, something that I have to do to somebody else as a result of something that I caused that person. That's when we're talking about liability or injury. The most important thing here is the third element in the tort, which is the breach of the duty caused a loss or an injury. The damages at that point were speculative because there was no injury and there was no loss. The time when an injury and loss actually occurred was during that litigation. That's when the injury occurred. That's when the loss occurred. By accepting what the court is proposing, the federal district court and the southern district is proposing, what we're basically doing is we're taking the four elements of the cause of action and we're merging them into two. That a legal malpractice cause of action can be asserted the minute you can show a breach of duty. What happened to the injury and the loss in the process? The damages are speculative only to the extent because there is no identifiable injury or loss. Even assuming for one moment that Mr. Benjes went out and got a second and a third and a fourth opinion, that is simply an opinion. That's all it was. Again, we're dealing with an injury or loss. It's speculative. Under Ashcroft v. Ickbar, how would my client be able to submit enough facts before the court can decide to plausibly plead a cause of action? How could he push it over and say, in fact, this is my injury, this is my loss? It was all speculation. Is there any New York law on this question? You told me that you didn't have any New York case. I do not. Supporting your position. Is there any New York law discussing this issue? I wish there was, Your Honor, but I've been unable to find it. As far as you know, there is no New York law. Yes, Your Honor. Is New York law applicable in this case? Or should we apply some other statute? No. The statute of limitations is very clear that the ones that are cited in our briefs, those are the statute of limitations that actually apply. And it's all New York state law? Yes, Your Honor. That is three years. Four years. Yes, Your Honor. From the date of accrual. And the definition of accrual is laid out in the court. No. When do you say accrual? December of 2010. That's when the injury and the loss ceased. Is that when the penalty was invalidated? Yes, Your Honor. What happened at that point that you say first accrued the cause of action? I'm sorry? What was it that accrued the cause of action in 2007? Was it this expert report? No. It was the expert report together with the judge's opinion that in fact this was a patent that was invalid and undue. Did the judge issue a final opinion on it? No, Your Honor. It was simply in discussions on the record. So this is no opinion of yours? Yes. And what happened to that in 2007?  So there's no judgment that the patent is invalid? No, Your Honor. However, think about it. The damages going forward. Every time my client seeks to assert this patent during discovery, this information is all going to come out. But there is no judgment invalidating the patent? No, Your Honor. So the patent is still presumptively valid? Yes, Your Honor. What did the judge say about the validity of the patent? Among other things, that it was invalid and that my client should be able to take the settlement. All right. We'll let you have the final comments. Let's preserve and we'll hear from Mr. Gibbs. Good morning, Your Honor. Good morning. The plaintiff here alleges that the allegedly negligent legal advice was given in 2000. And the plaintiff doesn't deny that the latest that defendants continue to represent him was at the time the patent was issued in September of 2002. The plaintiff also doesn't deny that there's a three-year statute of limitations for non-medical malpractice in New York and that there's no discovery rule. By another name, that's precisely what the plaintiff has been advocating before the district court and continues to advocate before this court. Now, you've heard us discuss the jurisdiction issue. Yes, sir. Whether or not this issue would be here or the Second Circuit. On what ground would the established jurisdiction be before the Federal Circuit? Well, Your Honor, first of all, it's plaintiff's, it's appellant's appeal. Appellant filed this appeal in this court. We don't have a cross appeal of any kind. So it is- I understand they filed it in the Second Circuit, correct? Apparently they did and apparently after consultations, which did not involve me personally, and since it's not a part of today's record, I'm not as aware of all the details and I was not the attorney involved. But accepting what was represented to the court a few moments ago, that there were consultations with other lawyers from my firm and it was agreed that it could be filed here in this court. I looked at the statute and what I can only presume, Your Honor, is that where the statute says if the jurisdiction of the lower court was based in whole or in part on the patent laws, the stipulation or the agreement must have been reached in light of the fact that if this motion to dismiss had not been granted below and the case were to go to trial, that patent issues or search issues would have been part of the trial record and therefore, since it was in whole or in part, the jurisdiction below is in whole or in part related to the patent statutes, that this statute, 1295, triggered the jurisdiction of this court. So that is apparently, I can presume, to be the case. Couldn't this case have been decided on the merits without any determination of any questions of patent laws? Suppose your firm could establish that the search it made in this case was accepted as an appropriate search in any patent case. That has nothing to do with interpreting or applying a provision of the patent laws. That involves what the duties of a lawyer are. And if you could establish that, I take it you would prevail on the merits of this case. I believe you're right, Your Honor. And therefore, I wonder how do you find that there is a question of patent law that is necessary for the plaintiff to prevail? I understand your point, Your Honor. Two things. First, just as a minor point, and I know it's come up in the prior discussion before Plaintiff's counsel, there's been some discussion about the search that was done by our firm. It is not a part of this record, which is purely on the motion to dismiss based on statute of limitations grounds. So it is not something that's currently before this court. But the allegation was that either there was no search or that the search was done improperly. And if the record were ever to be developed, if this court did not affirm and there were a trial, it would emerge that actually Plaintiff instructed that there be no search. So there was no search. But to answer Your Honor's procedural question, I believe that's right, that there are a number of different ways that the case could have moved if the motion to dismiss on statute of limitations grounds had not been granted, that one could postulate would not have involved the patent laws at all, as Your Honor correctly stated. I suppose one could equally postulate that it could have gone in other ways in which patent laws might have been implicated. And I can only suppose that it was that possibility, that was at issue, when the Plaintiff filed the appeal in this court and our firm apparently agreed to that. What's your answer to the argument of opposing counsel that rather than discovering the wrongdoing, the important thing here is when injury first occurred. She seemed to trace the moment of injury to when the district judge said informally, but on the record, that he doubted the validity of the patent. Yes, Your Honor. That really isn't a discovery rule, because the discovery would have to do with the prosecution conduct of the lawyer. Her point seems to speak to the time of injury. She puts it at when Rakoff said this patent looks like a lemon to me or whatever he said. What's your response to that? Judge, I believe what Plaintiff's position is here is that, as I believe was also mentioned previously, that was when an expert report emerged in a different litigation in December of 2007 that said there was prior art. That was at that moment in time. That's the moment in time they pin as the moment when they, quote, came to understand for the first time. Okay, but you're saying that's just a discovery argument, and under New York law, the time of discovery isn't helpful except in medical malpractice, so I'm not relevant here. But she seems to be saying, whether it's Rakoff's comment or the expert report, either way, that it's not a matter of that's when we first discovered the malpractice. She's saying that's the first time that we were in fact injured. Your Honor, I believe that's been addressed sufficiently by New York law. New York law has directly addressed the issue of when does injury occur for purposes of approval of a legal malpractice action. And what the Court of Appeals, the highest court in New York, has said on several different occasions, both in McCoy and Ackerman cases cited in Appellant's brief, is that the injury occurs at the time the legal malpractice, the time that allegedly negligent advice is given. That is the moment in time. And indeed, in both cases, the facts are almost directly parallel with the kind of argument that Appellant is making here. In the Ackerman case, which is a legal malpractice case, the plaintiff tried to argue that, gee, it doesn't accrue until the IRS assesses me and I find out that I actually owe these taxes. The court said, no, that's not going to accrue. It accrues at the time the lawyer gave you the allegedly negligent legal advice. Have your courts ever addressed this precise question? That is, whether a claim for legal malpractice can be set to accrue at a time when no damage is grasped? That's her claim. And she said she was unable, as I understood it, she said she was unable to find any cases. I believe, Your Honor, that both Ackerman and McCoy addressed the question of whether or not the argument of having only speculative or not yet actual damages is sufficient to put off the time of accrual of a legal malpractice. And you say you rejected that. And the court, I think, very clearly in both cases, both in the situation involving the IRS tax assessment situation, where it was legal advice relating to taxation, as well as in the McCoy case, the more recent Court of Appeals case, where the issue was advice that had been given with respect, an accident had been done with respect to, it was a wife plaintiff in a divorce action, whether or not the lawyer had properly given advice and made filings concerning the husband's pre-retirement death benefits. And she tried to argue that, gee, I don't know whether or not I will have non-speculative actual damages until the husband dies and we see what happens. Well, the court addressed that exact question in its opinion and said, no, we can't have an encoding statute of limitations hanging out there in the ether that way. It's got to be at the time the actual legal malpractice, the bad advice or the bad legal services were rendered. That's the time injury occurs. That's the time when the plaintiff could begin to rely on it. And that's when we start the clock running. That seems to be rather unusual, though, doesn't it? Because if you don't know that the advice that you receive is going to injure you for 7 to 10 years, like a license for a particular business transaction that is declared void 7 to 10 years, based upon legal advice which was erroneous, does that mean that your statute of limitations prevents you from recovering any damages at that point? It doesn't make any sense. Well, I have two responses, Your Honor. First is I would respectfully refer you to Judge Rakoff's ruling in this case where he makes the point, and I believe he even mentioned something along those lines, that he might not be happy with some of the implications of this statute and the case laws as the Court of Appeals has issued the case law. But that is, in fact, the law, and whether those are the policy implications or not, he was obliged to enforce it. And, Your Honor, we would believe that just like in almost any situation involving a statute of limitations, when you're talking about the overall policy implications and potential ramifications, one can make policy arguments on both sides. The arguments that the Supreme Court has recently made with respect to repose and the need for finality on the one hand versus, on the other hand, fairness to the individual plaintiffs. Well, let's be clear about the ramifications. Yes, Your Honor. But if we consider the practical circumstance of all patent cases, if I'm a patent prosecuting attorney, and Arthur Piazza is the inventor and he comes to me and I take the case and I file an application on his behalf, and let's assume that all of my analysis and everything that I wrote up in the application is grotesquely incomprehensible. Under the average time of examination, the statute of limitations in New York will have run before the patent even issued. So there'll be no chance for somebody to enforce it and then find out that the patent was invalid because I totally bungled every single thing I did in the prosecution. It's likely to be a decade later before there'll be any invalidity issue raised in a court. So in every patent case, then, malpractice, at least in New York, is totally off the table because it will never be within three years of when the prosecution misconduct by the attorney occurs. Your Honor, in this case, we've acknowledged for purposes of this appeal and for purposes of this motion that under New York's continuous representation doctrine, you would even extend the time all the way through the issuance of the patent, which was in September of 2002, which was about two years and two or three months after the application was filed. So you have that continuous representation doctrine, which in many ways is there to address some of the precise issues that Your Honor just mentioned. So after the patent is issued... Let me ask you one question. Because you make a good point about issuance date versus advice date. That's a very fair point and nicely put. But on the other hand, patents are good for 20 years. Now suppose that the inventor of DIARS has patent issues and nobody's infringing it for 10 years. And then suddenly somebody makes an infringing product and so he goes off to a service, patent files them, and then it turns out the patent's blatantly invalid because everything Prosecuting Attorney Michel did was totally incompetent. But now we're 10 years from issuance but only halfway through the life of the patent and malpractice is out the window in every such case. Your Honor, if there is in fact a situation where the period of time, three years has passed after the claim has accrued and injury has occurred, as both the statute and the court of appeals of the state of New York have ruled that they accrue, then that well could happen and that would be the implication. I can make the arguments and I'm sure this panel is well aware of them and doesn't need to hear them from me. On the other side, in favor of statutes of limitations and having fresh evidence. Look at trial delay time. Suppose that in the same hypothetical I gave you before, the suit is filed on day one, the day after the patent issue is the suit is filed. The suit is going to take three years to get tried, if not more. So if issuance date is a magic date to start the three year statute of limitations on malpractice running, by the time the district court gets around to holding the patent that I procured for Guyarza invalid, it's already too late. Well, Your Honor, I'm not sure that that would necessarily be the case either because by that time you would have accrual, you would have filed your complaint, you would then have litigation. I presume that once you have an act of litigation that you've already filed your complaint and your statute, you're within your statute as long as you file your damages claim against the lawyers within that three years. Your Honor, I'm talking about the infringement case. Oh, I'm sorry. It's filed the next day after the patent issue. But because the adjudication times are so slow, the malpractice three year statute of limitations in almost every case will already have run before the district court in the infringement case has the opportunity to rule on validity. And therefore, when the district court finally finds the patent invalid and it becomes clear that it was all my fault, it's already too late. The statute has run. Well, it's an interesting point, Your Honor. I suppose what I would do if I represented such a plaintiff and I was in the middle of that litigation and it was taking three years, I suppose I might be guided by the very clear New York Court of Appeals cases that I've just cited to you and several others. I would file an action, and I would claim that I've been injured, that I've already incurred legal fees, that I've already incurred patent fees, marketing fees, and expenses, all fees which Judge Friedman correctly said already in this record that this particular plaintiff already incurred. I have a clause of action, and if I haven't yet— But based on what? That the answer says the patent is invalid? Just because the defendant in the infringement action asserts in an answer that the patent is invalid, that crystallizes the injury to the patent owner? Again, Your Honor, I think the two actions are somewhat separate. In order to prove my legal malpractice, I don't think it's the exact same standard as what the infringement action would have to find in order to find my patent invalid. If I found that the lawyer—even if I ultimately prevail, for example, in the patent action on the infringement case, I could still potentially prove that my lawyers acted way less than the standards of reasonable care and prevailed in my malpractice action, and I might still have some damages. What if it's the expert report at the end of discovery for the accused infringer that contains an assertion of invalidity of the patent? If we use that, that still might be three years plus after the filing of the lawsuit that's filed the day after the patent issue. All those events which could trigger additional damages and or additional knowledge in the mind of the plaintiff that he either has a better clause of action, a stronger clause of action, or even a possible clause of action could all happen well outside the three-year statute of limitations. That is the case, Your Honor. But I don't believe Patentee would file a patent against his lawyer while he has an infringement action against somebody else. He'd better be an oxymoron in this case. He'd have to admit that his patent is invalid at that point? Well, I'm not sure there would be a way to say that I've got this case pending and I'm prosecuting that case, but because I have a three-year statute of limitations that the Court of Appeals of New York has said I have to live with, then I have to do what I have to do to protect my own rights. Your answer to the problems to which the other members of the panel have just been alluding is that if in fact the New York three-year statute and the way it's been interpreted causes serious problems with respect to claims of legal malpractice in patent litigation and only in patent litigation, then it's up to the New York legislature to change the law if it wants to create an exception or a different standard for patent cases. But we are bound here in this court by the interpretations of the New York courts and New York law. Precisely, Your Honor. I'm sorry. Anything further? If I could just address the final point that Judge Friedman made early on. In addition to making the point that the Court of Appeals of New York has ruled on this issue, that the legislature has passed the relevant statute and the Court of Appeals has issued the case law that we're now bound and guided by, we don't even have to reach the issue of whether or not that law applies in New York. And that's because here, even under plaintiffs' and appellants' own record and their own complaint, they have non-speculative actual damages as of the time of September 2002. And they list them in their complaint, paragraphs 16, 19, and 20, page 8 of the joint appendix, patenting costs, manufacturing costs, marketing costs, selling costs. They call them investments, but whether they call them investments or damages or costs or anything else, these are clearly non-speculative actual damages that they already had in September 2002. So even under plaintiffs' own theory, which of course we do not accept and we've been discussing up to this point, but even under plaintiffs' own theory, they would have had a cause of action that they could have brought back then. So less money, perhaps, than they're now seeking, but still definite amounts. Precisely. All right, thank you. Thank you. Is there a rebuttal time for you, Ms. Terry-Cole? Yes, sir. Okay. With regard to the very last point about the damages being in the master payment, there are four elements for the approval of a legal malpractice lawsuit that must be assured. Duty, breach of duty, injury, and damages. The damages are clearly distinct from the injury. It is our position, Your Honors, today that there was no way that we would have been able to assert sufficient facts in connection with the third element of injury until December 2007. So that even if, in fact, there was a number that we could come up with in connection with damages, that would have been speculative in the sense that, what are you coming here asking for? You haven't been injured. Nothing has happened to you. That injury didn't occur until December 2007. Going back to Your Honor's position about whether there is any case law in the State of New York for legal malpractice, the question of legal malpractice, not accounting malpractice, as we stand here today, neither I nor appellees have been able to supply any cases in the State of New York that specifically address when a cause of action for legal malpractice accrues. The cases that are before this Court are all accounting cases. Those cases do stand for the proposition of when the statute of limitations begins to run and the fact that the cause of action needs to accrue. Those cases are distinguishable from the case here before this Court today in that, in those cases, the injury was ascertainable at the time that the breach of duty actually occurred. The injury or the damage? The injury. The injury was ascertainable. The Court is very, very clear. The same thing true here. The injury occurred under your theory when the patent issued because the patent shouldn't have issued because the patent was invalid due to inadequate service. Because there was no damage in it, a loss to my client. In fact, my client is better off when he got the patent in his head than before he had the patent. Now he has the right, in the eyes of the law, to prevent others from making, using, or selling his invention. He wasn't damaged. Injury or loss is due to the damage of personal property. That's how Black's dictionary actually defines it. There is no loss. He had a patent. The patent, in his mind, was enforceable. There was no injury until December of 2007, and that's what distinguishes this case from the accounting cases that have been submitted in support of our position. Well, the problem I have with that is you said there was no injury until 2007. It's a commonplace in patent litigation that the accused infringer discovers prior art that the plaintiff had not discovered, and that there's enough involvement of the attention of the plaintiffs. The fact that an expert came up and said, I've discovered two pieces of prior art that I think invalidate the patent, doesn't mean that that's when the injury or the damage has occurred, because it could have been. I don't know anything about it. In many cases, what happens is the answer is those two pieces of prior art are distinguishable. They don't invalidate the patent. Your Honor, let's put it back into perspective in terms of procedure. We drafted a complaint. We brought it to the court. The court basically dismissed it on the basis of the statute of limitations. The implication was, when he did that, when Judge Raboff did that, was that I could have drafted exactly the same complaint with the same level of specificity back in 2002 or 2005. Under the Ashcroft v. Iqbar Supreme Court case, which says that I need to allege sufficient facts so that my cause of action is not possible or likely, as my adversary has argued, but rather that it is plausible. The court says it has to push the case over the line so that the claim is much more rather to be rather than not to be. That's the implication that Judge Raboff is saying. My position is, because I'm the one who drafted the complaint, that there is no way I could have drafted a complaint in 2005 without being speculative about the injury. There was no injury. The argument that would have come back was that it happened. Why couldn't you have hired an opinion counsel to give you an opinion on the validity of the patent as soon as the patent had issued? And if the expert opined that it was almost certain the patent was invalid, then why isn't that enough right then and there to prove injury? Because for every expert that I could hire at that point, without some sort of court imprimatur of validity, as happened before Judge Gorenstein, incidentally. It was a different case. It wasn't before Judge Raboff. Without some sort of imprimatur of validity from the court, that my position of invalidity of the patent, for every expert that I could hire that says the patent is invalid, there's an expert that says that it's invalid. So where do we draw the line? It would be important to prove that the patent would be invalid at that particular juncture, would it not? So if you believe that the patent validity is at question, you raise it at that point, you get your experts, and then you proceed with all your action. And there's no burden to prove it. That was exactly the argument that I made before Judge Raboff. I posited that if, in fact, we take that position, now you have a patent holder who has a patent, who's overjoyed, who thinks he has a monopoly, who can do all these things. And now what you're saying is, oh, well, because the New York State law is this way, you, patent holder, have the burden to go in and hire an expert, incur additional costs. Your Honor pointed out how expensive it is to do a full-blown patent search, to do an additional search to determine whether the patent is invalid and unenforceable. That is extremely difficult on the patent holder after he has incurred $40,000, $50,000, $60,000, $100,000 in costs to get the patent, both domestically and internationally. It is a burden that is truly prejudicial to the patent holder and may very well stifle creativity and invention because if I, as the patent holder, think, okay, so what good is it? I hired this patent attorney, now I'm going to go hire the other one, the other one to get additional opinions. You have to draw the line somewhere as to where the patent holder has to go. You have to draw the line somewhere on time. Lots of extra time. We thank you both for a very forceful and clear argument to take the appeal under advisement, and the Court will now take a brief recess. All rise.